Filed 7/20/26  P. v. Ernst CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES PHILLIP ERNST,<br><br>    Defendant and Appellant. | H052919<br>(Santa Clara County<br>Super. Ct. No. CC648243) |

Charles Phillip Ernst appeals from a resentencing order, arguing the trial court abused its discretion in declining to strike his prior strikes pursuant to its authority under Penal Code[1] section 1385, subdivision (a) and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  As explained further below, we disagree and affirm the order.

### I.  FACTS AND PROCEDURAL BACKGROUND[2]

On November 8, 2006, Ernst killed Addison Carlson by repeatedly stabbing him with a knife.  Carlson had permitted Ernst to move in with him

---

[1] Further unspecified statutory references are to the Penal Code.

[2] We take these facts from the probation report prepared for Ernst's original sentencing.

following Ernst's release from prison while Ernst was waiting to be admitted to a residential drug treatment program.

A few days before the murder, Ernst had told Carlson that he (Ernst) had thought about stealing checks from Carlson and tying Carlson up and cutting him with a meat cleaver. On the night of the murder, Carlson came home and found Ernst on the couch, intoxicated. Carlson told Ernst that he was disappointed in him and it was time for Ernst to move out. Carlson told Ernst that he "loved him like a brother" and was not going to give up on him, but it was time for Ernst to get his life together. Carlson told Ernst he would not lend him $400. Angered, Ernst grabbed a knife and stabbed Carlson in the neck and stomach. Ernst left the knife in Carlson's neck and Carlson dead on the floor. Ernst changed his clothes, stole some checks and a car from Carlson, and drove away. Law enforcement officers located Ernst shortly thereafter. Ernst admitted to killing Carlson and stealing from him.

At the time he killed Carlson, Ernst was 61 years old. He had been out of prison for three months. He had incurred 38 felony convictions, including attempted robbery, assault with a deadly weapon, prison escape, and many theft- and drug-related convictions. Ernst's criminal record spanned 30 years; he had served nine prison sentences and had violated parole seven times.

On August 13, 2007, Ernst was convicted by plea of second degree murder (Pen. Code, § 187; count 1). He also admitted a deadly weapon enhancement (§ 12022, subd. (b)(1)), three prior strike convictions (§§ 667, 1170.2),[3] two prior serious felony convictions (§§ 667, subd. (a), 1192.7), and

_____

[3] Ernst's strike priors were for two convictions of attempted robbery with personal use of a deadly and dangerous weapon stemming from a single incident in 1989 and an assault with a deadly weapon that occurred in 1970.

to having served five prior prison terms (§ 667.5, former subd. (b)).  On October 29, 2007, the trial court sentenced Ernst under the Three Strikes law to a total aggregate term of 45 years to life, consecutive to 15 years, which included four, consecutive one-year prison terms for his prison priors.[4]

Ernst was identified by the Director of the California Department of Corrections and Rehabilitation (CDCR) as an individual potentially eligible for resentencing under section 1172.75, subdivision (b).[5]  On June 17, 2024, Ernst filed a request for the court to recall and resentence him pursuant to sections 1172.75 and 1172.1.[6]  Ernst maintained he must be fully resentenced due to the now-invalid prison priors.  Ernst also requested that the court exercise its discretion under section 1385, subdivision (a) (section1385(a)) to dismiss his strike priors pursuant to *Romero*, *supra*, 13 Cal.4th 497 (*Romero* motion).  Ernst also contended he "qualifies for a recall under [section] 1172.1."

Both parties filed briefs in anticipation of recall and resentencing.  The People requested that the trial court reduce Ernst's sentence by four years by striking the prison priors but argued the court should not otherwise alter his sentence in the interests of justice and public safety.

---

[4] The trial court stayed the punishment on one of the five prison priors.

[5] Section 1172.75 provides for the recall and resentencing of defendants with certain invalid sentencing enhancements.  In the section 1172.75 resentencing, trial courts are directed to "apply 'the sentencing rules of the Judicial Council and . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.' " (*People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 849.)

[6] Section 1172.1, subdivision (a)(1) grants the trial court authorization "at any time upon the recommendation of the secretary" to "recall the sentence and commitment previously ordered and resentence" a defendant "in the same manner as if they had not previously been sentenced."

The People further argued the trial court should not strike any of Ernst's prior strikes. The People maintained that Ernst falls "squarely within the spirit of California's [T]hree [S]trikes law," given his numerous prior crimes and the facts of the instant offense. The People noted that Ernst had committed the murder at age 61, suggesting he would remain a danger to the public even if released at an advanced age. Finally, the People stated that the family of the murder victim were "strongly against [Ernst's] release" and requested that they be permitted to address the court at any resentencing.

In support of his *Romero* request,[7] Ernst described his killing of Carlson as the product of a lifetime of substance abuse and a medical issue that led him to being removed from the Salvation Army rehabilitation program and an addiction that "raged out of control." Ernst stated that, since his incarceration for this offense, he has been a model prisoner, is currently 79 years old, and has been deemed "medical high risk" since 2022. Ernst argued that, if the trial court struck his strikes, he would not be immediately released but would be allowed to appear in front of the parole board "during his natural life span."

In his motion, Ernst described his childhood as marked by his father's alcoholism and his mother's struggle to support her children. Ernst was sexually molested by a man who befriended him. Ernst became an alcoholic as a teenager and addicted to drugs thereafter. He served his first prison sentence at age 23. He incurred his first strike offense at age 24.

---

[7] Ernst filed one motion under section 1172.1, and one motion addressing section 1172.75 and *Romero.* The arguments summarized here appear in his two motions.

Since the beginning of his current incarceration, Ernst had incurred no rules violations and received the lowest possible risk score from the CDCR. He had engaged in extensive programming.

Ernst maintained that his prior offenses were the product of untreated adolescent mental health disorders and traumas, as well as the coping mechanism of substance abuse. Ernst argued his model behavior in prison demonstrates he no longer poses a danger to society. His strike priors were 55 and 35 years old. Ernst contended that the interests of justice dictate that the trial court should strike his prior strike offenses under section 1385(a).

The probation department prepared a supplemental probation report in anticipation of Ernst's possible resentencing (supplemental report). The supplemental report states that Ernst does not appear to have any recent disciplinary actions in prison but was only "minimally involved in rehabilitation efforts." With respect to the *Romero* factors, the supplemental report notes the violence of Ernst's instant conviction, the length and extent of Ernst's criminal history, and his poor performance on probation and parole. The report describes Ernst as "the embodiment of the [T]hree [S]trikes law" and asserts "sentencing pursuant to the [T]hree [S]trikes law is undeniably appropriate."

The trial court conducted a hearing on Ernst's motions on December 5, 2024. Ernst's defense counsel stressed that 79-year-old Ernst was not seeking immediate release. Counsel asked the court to consider exercising its discretion to strike the prior strikes in order for Ernst to be eligible for parole earlier than 2032, his first parole date. Ernst's counsel argued that, in the prior strikes, Ernst did not actually commit any physical harm against any of the victims, and Ernst's prior offenses were more akin to theft offenses to support his addiction.

The People asked the trial court not to recall Ernst's sentence under section 1172.1 because Ernst continues to constitute a public safety risk. L.J.,[8] Carlson's daughter, addressed the court. She described her father as a minister, a person dedicated to the rehabilitation to others, and as engaged to be married at the time he was killed. She detailed the ongoing trauma experienced by herself and the rest of the family from her father's death. L.J. described herself as a psychologist who herself helps others change and heal, but she asked the court not to make sentencing decisions that would result in the release of Ernst and possibly cause danger to others.

J.C., Carlson's son, also addressed the trial court and requested that the court not strike any enhancements for which it had discretion. His wife, A.C., stressed that, at the time of Ernst's original sentencing, no one in the family "was for the death penalty," but the family understood that Ernst would be imprisoned for the rest of his life. The family was very concerned that, if released, Ernst might harm someone else.

After hearing argument and this testimony, the trial court ruled on Ernst's motions. The trial court declined to exercise its discretion under section 1172.1 to recall the sentence and resentence Ernst. The court noted in particular that, although Ernst's age would normally weigh in favor of recall, "the most violent act in [Ernst's] criminal history was committed when he was 61 years of age, and there's nothing before the [c]ourt to suggest that he does not pose [a] danger to the community simply because of his age."

Regarding the application of section 1172.75, the trial court recalled Ernst's sentence under that provision and conducted a full resentencing hearing. Addressing Ernst's *Romero* motion, the court noted that the criteria

[8] We use initials to refer to Carlson's family members to protect their personal privacy interests. (Cal. Rules of Court, rule 8.90(b)(10).)

for *Romero* were not "exactly the same" as for section 1172.1. The court observed that one of the strike priors was 54 years old but, also found that "there does not seem to be any period of non-incarceration in which Mr. Ernst has not engaged in some sort of criminal activity that is either violent or serious."

In considering Ernst's *Romero* request, the trial court found that Ernst "has an extreme criminal history" and has not demonstrated lawfulness for any portion of his life. The court commended Ernst on his willingness while incarcerated to engage in rehabilitative services. Nevertheless, the court found that Ernst was a habitual offender between 1970 and 2005 and there is "nothing . . . upon which the [c]ourt can determine that he falls outside the spirit of [the] [T]hree [S]trikes law." The court denied Ernst's *Romero* request.

In resentencing Ernst, the trial court denied probation and imposed on count 1 a sentence of 15 years to life, tripled under the Three Strikes law, to 45 years to life. The court struck under section 1385, subdivision (c) the punishment for the section 12022, subdivision (b)(1) enhancement and the two serious felony priors under section 667, subdivision (a). The court dismissed the five section 667.5, subdivision (b) enhancements by operation of law, resulting in a total aggregate term of 45 years to life in prison.

Ernst timely appealed.

## II.  DISCUSSION

On appeal, Ernst argues the trial court abused its discretion in declining to strike his prior strikes. Ernst requests that this court reverse the trial court's order, and remand with instructions to the trial court to

grant his *Romero* motion and resentence Ernst to a term of 15 years to life in prison.[9]

Ernst argues the trial court abused its discretion under *Romero* principles by failing to properly take into account the length of time between Ernst's prior strikes and the instant offense. Ernst also contends the court erred by failing to properly evaluate Ernst's diminished capacity to engage in violent acts. Ernst asserts that he "is far less likely and able to commit a crime of violence at his current age of 80 than he was when he was 61 years old." Finally, citing section 1385, subdivision (c)(2), Ernst states the trial court failed to give his history of childhood trauma " 'great weight.' " While Ernst acknowledges that the trial court considered the factors he specifies in his briefing, he maintains the court failed to give them "proper weight."

The Attorney General disagrees and contends the trial court did not abuse its discretion in declining to strike Ernst's prior strikes.

Section 1385(a) states in relevant part that a "judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Discretionary dismissal under that subdivision may include a strike prior conviction. (*Romero, supra*, 13 Cal.4th at pp. 530–531; *People v. Williams* (1998) 17 Cal.4th 148, 151 (*Williams*).) The sentencing court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

---

[9] Ernst does not raise any issues on appeal with respect to the trial court's decisions under sections 1172.1 or 1172.75.

8

We review the trial court's ruling for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 152.) That deferential standard asks not whether the trial court's decision was correct in the sense that it is the same decision we would have made; rather, it asks whether the court's decision falls within the range of outcomes permitted by the controlling law.

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid*.) The burden is on the party attacking the sentence to clearly show that the sentencing decision is irrational, arbitrary, or contrary to law. (*Id.* at p. 376.)

We decide that Ernst has not carried his burden of demonstrating that the trial court abused its discretion in determining that Ernst's circumstances fall within the spirit of the Three Strikes law. Ernst had three prior strike offenses, namely, his 1970 conviction for assault with a deadly weapon (§ 245), and two 1989 convictions for attempted robbery (§§ 664, 211) with personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)). He was convicted in this matter of another, even more serious strike offense— second degree murder (§ 187). He has 35 other prior felony convictions. His behavior on parole and probation was extremely poor. And though Ernst points to mitigating evidence, such as his difficult childhood, his advanced age, good conduct in prison, and participation in some programs in custody, the presence of mitigating evidence is not enough to render the trial court's decision an abuse of discretion. The trial court acted within the applicable standards when it declined, based on Ernst's "extreme criminal history," to find that he falls outside the spirit of the Three Strikes law.

Ernst appears to argue that the trial court erred under section 1385(a) in failing to give " 'great weight' " to his history of childhood trauma, a factor identified under section 1385, subdivision (c)(2). But section 1385, subdivision (c) does not apply to the Three Strikes law, which sets out an alternative sentence scheme and is not an "enhancement." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242.) In any event, the court was clearly aware of Ernst's difficult childhood. That the court chose to weigh that factor less heavily that Ernst believes it merited does not render the court's decision an abuse of discretion.

We see no indication in the record that the trial court was unaware of the law or standards under *Romero* and *Williams* when it considered Ernst's request that it strike his strike priors. Rather, the record reflects that the court carefully considered the relevant circumstances and concluded it was not appropriate to depart from the sentencing norms established by the Three Strikes law.

### III. DISPOSITION

The trial court's December 5, 2024 sentencing order is affirmed.

_____
Danner, Acting P. J.

WE CONCUR:

_____
Bromberg, J.

_____
Chung, J.*

**H052919**
*People v. Ernst*

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.